IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MICHAEL NUSS,<br><br>　　　Plaintiff,<br><br>vs.<br><br>UTAH ORTHOPAEDIC ASSOCIATES, P.C., and JOHNSON, RIDDLE, & MARK, LLC,<br><br>　　　Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ORDER TO SHOW CAUSE<br><br><br><br>Case No. 2:09-CV-647 TS |

This matter comes before the Court on a Motion for Summary Judgment filed by Defendant Johnson, Riddle, & Mark, LLC ("JRM"). For the reasons discussed below, the Court will grant the Motion.

I. MOTION TO STRIKE

Defendant Johnson, Riddle, & Mark, LLC ("JRM") filed the Affidavit of Jana Petty in support of its Motion for Summary Judgment. Plaintiff Michael Nuss ("Nuss") objects to the Affidavit of Jana Petty and asks that it be stricken. Nuss argues that Ms. Petty's affidavit lacks

1

personal knowledge and foundation, and that the attached documents fail to meet the business record exception to the hearsay rule.

"[A]ffidavits . . . used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[1] Personal knowledge means the affiant's testimony is based on the affiant's actual perceptions or observations[2] as opposed to "statements of mere belief."[3] Nevertheless, "personal knowledge of the affiant . . . may be inferred from the context of the affidavit."[4]

In her affidavit, Ms. Petty testifies as to her position with JRM, experience with the company, knowledge of the company's procedures and computer systems, and the records of this case.[5] From this testimony—forming the context of the affidavit—the Court can infer that Ms. Petty is testifying from personal knowledge. Ms. Petty additionally testifies that, in accordance

---

[1] Fed.R.Civ.P. 56(c)(4).

[2] *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (2006) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)) (lacking personal knowledge if "witness could not have actually perceived or observed that which he testifies to").

[3] *Id.* (quoting *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)) ("Accordingly, at the summary judgment stage, 'statements of mere belief' in an affidavit must be disregarded.").

[4] *Roberts v. Cessna Aircraft Co.*, No. 07-3133, 2008 WL 3524009, at *2 (10th Cir. Aug. 14, 2008); *see also Told v. Tig Premier Ins. Co.*, No. 03-4113, 2005 WL 1910796, at *3 (10th Cir. Aug. 10, 2005) ("[G]enerally Rule 56(e)'s requirements of personal knowledge and competence to testify may be inferred if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge.").

[5] *See* Docket No. 13, Aff. of Jana Petty.

with JRM's procedures, she personally reviewed and took certain actions in regards to Nuss' records.[6] Such testimony—based on Ms. Petty's actual perceptions or observations—substantiates that Ms. Petty's affidavit is based on personal knowledge. The Court, accordingly, finds that Ms. Petty's affidavit is admissible and it will be considered by the Court in resolving Defendant's Motion.

As to the documents attached to Ms. Petty's affidavit, Rule 803(6) of the Federal Rules of Evidence "provides an exception to the hearsay rule for records 'kept in the course of regularly conducted business activity . . . if it was the regular practice of that business activity to make the . . . record.'"[7] "A foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court."[8]

In the present case, the Court finds foundation for the admissibility of both the demonstrative initial demand letter and the communications log attached to Ms. Petty's affidavit by considering the nature of JRM's business and the nature of the attached records. JRM's business is to collect debts, and both the demonstrative initial demand letter and the communications log are examples of typical records created and kept as part of a debt collection business.

---

[6] *Id*. at 3 (testifying she personally received, reviewed, and responded to Defendant's letter disputing validity of debt).

[7] *United States v. Yeley-Davis*, 632 F.3d 673, 678 (10th Cir. 2011) (quoting Fed.R.Evid. 803(6)) (alterations in original).

[8] *United States v. Johnson*, 971 F.2d 562, 571 (10th Cir. 1992) (quoting *FDIC v. Staudinger*, 797 F.2d 908, 910 (10th Cir. 1986)) (approving district court determination that "the nature of the documents and the circumstances under which the investors received them were sufficient to establish their status as business records").

The Court also finds foundation for the admissibility of the two remaining attachments: a letters received from Nuss, and documents from Spine and Sports Medicine, PC ("SSM") and Nuss' insurance company, USAA. The Court finds these documents admissible because, although not created by JRM, the documents may be properly admissible for the purposes for which they are submitted—to show that JRM had a reasonable basis for attempting to collect the debt from the Nuss.

Finally, the Court notes that Nuss has not submitted evidence in support of his arguments against Ms. Petty's affidavit. There is no evidence in the record that disputes Ms. Petty's testimony or the documents attached to Ms. Petty's affidavit. Based on the foregoing reasons, the Court will deny Plaintiff's Motion to Strike and will consider Ms. Petty's affidavit and the attached documents in its consideration of the JRM's Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

In late 2008 and early 2009, Nuss sought treatment for injuries sustained in an automobile accident. Nuss was treated by Dr. Charles M. Bova of SSM. Nuss' insurance company, USAA, was billed for the services. However, USAA refused to pay because benefits were exhausted. SSM was unsuccessful in obtaining payment directly from Nuss. SSM, consequently, engaged JRM to collect the debt owed by Nuss to SSM. Shortly after being retained to collect the debt, on or about May 7, 2008, JRM sent an initial collection letter. The letter contained the "mini Miranda" notices and warnings required by law.

Nuss contacted JRM by telephone on or about May 12, 2008, confirming that he received the initial collection letter. On or about June 16, 2008, JRM received a letter from Nuss

disputing the validity of the debt owed to SSM. The letter from Nuss was accompanied by a letter from Nuss' former counsel indicating that no debt was owed to Utah Orthopaedic Associates. JRM immediately sent Nuss verification of the debt owed to SSM. After an appropriate delay to ensure that Nuss received the verification of the debt owed to SSM, JRM continued collection efforts.

On or about June 9, 2009, Nuss commenced an action against JRM in Utah state court for violation of the Fair Debt Collection Practices Act ("FDCPA") and Utah Consumer Sales Practices Act ("UCSPA").

## III. SUMMARY JUDGMENT STANDARD

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[9] The Court decides whether a genuine dispute as to any material fact exists by determining whether a reasonable jury could return a verdict for the nonmoving party in light of all the evidence presented.[10] "Summary judgment is 'appropriate' under Rule [56(a)] only when the moving party has met its initial burden of production under Rule 56(c)."[11] "When the moving party has carried

---

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)); *see also* Fed.R.Civ.P. 56(c)(1) (requiring both moving and nonmoving party to support his or her assertions by "citing to particular parts of materials in the record"); *Dillon v. Fibreboard Corp.*, 919 F.2d 1488, 1490 (10th Cir. 1990) (recognizing nonmoving party "may not rest on his pleadings . . . [but] must set forth specific facts showing that there is a genuine issue for trial").

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[11] *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 389 U.S. 144, 160 (1970)).

its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."[12] "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'"[13] "The purpose of a summary judgment motion . . . is to determine whether there is evidence to support a party's factual claims. Unsupported conclusory allegations thus do not create a genuine issue of fact."[14] In other words, "[u]nsupported allegations may suffice for a complaint, but they are insufficient to defeat summary judgment."[15]

IV. DISCUSSION

JRM moves the Court to grant its Motion for Summary Judgment arguing that it has fully complied with its obligations under the FDCPA and the UCSPA, and that this case presents no genuine dispute of material fact with respect to Nuss' claims against JRM. Additionally, JRM moves the Court to dismiss this action for failure to prosecute because Nuss abandoned this litigation soon after initiating it more than eighteen months ago.

---

[12] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[13] *Id*. at 587 (quoting Fed.R.Civ.P. 56(e)) (restructured as 56(a)) (emphasis in original).

[14] *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010) (quoting *L&M Enter., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)).

[15] *Hinojos v. Honeywell FM&T*, No. 06-2310, 2007 WL 1271521, at *2 (10th Cir. May 2, 2007).

A. VIOLATIONS OF THE FDCPA

"To prevail on a claim under the FDCPA, a plaintiff must prove that a 'debt collector's' effort to collect a 'debt' from a 'consumer' violated some provision of the FDCPA."[16] The FDCPA broadly prevents a debt collector from misrepresenting the nature of the debt owed by the debtor, and requires a debt collector to provide certain statutorily-required notices.[17] The UCSPA likewise prohibits deceptive or unconscionable acts or practices in consumer transactions, including enforcement of a consumer transaction.[18]

In his Complaint, Nuss alleges that JRM violated the FDCPA by (1) failing to properly respond to Nuss' debt validation request and suspend collection activities pending validation; (2) misrepresenting the nature, character, and/or amount of debt by misstating that there is a past due balance, trying to collect monies not owed, and reporting incorrect credit information; and (3) failing to provide statutorily required notices to Nuss.

   *i.   Response to debt validation request.*

Under the FDCPA, a debtor may request validation or verification of a debt from a debt collector.[19] If a debt is disputed in writing within thirty-days of receipt of an initial 1692g(a) notice, a collector must "cease collection of the debt . . . until the debt collector obtains

---

[16] *Maynard v. Cannon*, 401 Fed. Appx. 389, 393 (10th Cir. 2010).

[17] *See* 15 U.S.C. §§ 1692e-g.

[18] *See* Utah Code Ann. §§ 13-11-3 to -4.

[19] *See* 15 U.S.C. §§ 1692g(a)(4), (b).

verification of the debt" and mails a copy of the verification to the debtor.[20] "This provision is not intended to give a debtor a detailed accounting of debt to be collected. Instead, 'consistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'"[21] The Fourth Circuit has held that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt."[22]

Here, Nuss alleges that JRM failed to provide verification of the debt when requested, and that JRM pursued collection despite failing to verify the debt. Nuss, however, does not provide any evidence in support of his allegations. On the other hand, JRM has provides sworn testimony and documentary evidence indicating that JRM promptly sent verification of the debt upon receipt of Nuss' letter disputing the debt. Specifically, Ms. Petty testifies that she prepared and sent a letter to Nuss validating the debt owed to SSM—which is confirmed by the attached communications log.[23] The communications log additionally indicates that the validation letter was sent on or about June 16, 2008, there is no record of the validation letter being returned or

---

[20] 15 U.S.C. § 1692g(b).

[21] *Maynard*, 401 Fed. Appx. at 396 (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)).

[22] *Chaudhry*, 174 F.3d at 406; *see also Maynard*, 401 Fed. Appx. at 396 (following *Chaudhry*).

[23] *See* Docket No. 13, at 4, Ex. B.

8

undeliverable, and that collection activities were suspended until on or about December 3, 2008.[24]

Nuss, as the nonmoving party, "must come forward with 'specific facts showing that there is a genuine issue for trial.'"[25] Nuss has failed to do so, and unsupported allegations are not enough to defeat summary judgment. Based on the aforementioned reasons, the Court will grant JRM's Motion for Summary Judgment on this claim.

  ii. *Misrepresentation and attempts to collect debt*.

Nuss next attempts to state a claim under the FDCPA by alleging that the debt JRM sought to collect was not owed.

Section § 1692e(2)(A) "provides that a debt collector may not falsely represent the character, amount or legal status of any debt. Section 1692(e)(10) prohibits 'the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.'"[26] However, "[c]ourts have held 'that the allegation that the debt sought to be collected is not owed, standing alone, cannot form a basis for a 'false and

---

[24] *See* Docket No. 13, Ex. B.

[25] *Matsushita*, 475 U.S. at 586.

[26] *Reed v. AFNI, Inc.*, No. 2:09-CV-459 TS, 2011 WL 112430, at *2 (D. Utah Jan. 13, 2011) (quoting 15 U.S.C. § 1692e(10)).

misleading practices' claim under the FDCPA.'"[27] In addition, to state a claim under 15 U.S.C. § 1692e, a plaintiff must show that a misstatement of an amount owed is knowing or intentional.[28]

Nuss fails to provide evidence supporting his allegation that JRM was, in fact, attempting to collect an invalid debt, or that JRM knowingly made any misrepresentation concerning the validity of the debt to the debtor or a credit agency. According to Ms. Petty's testimony, JRM never made a report to any credit agency regarding Nuss.[29] Thus, in light of the evidence presented by JRM and the fact that Nuss fails to support his arguments, the Court will grant summary judgment in JRM's favor on this claim.

    *iii.    Statutorily-required notices.*

Under the FDCPA, a collector is required, within five days of initiating collection activities against a debtor, to provide the debtor with a written notice containing:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the

---

[27] *Id.* at *2 (quoting *Bleich v. Revenue Maximization Group, Inc.*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002)).

[28] *Ducrest v. Alco Collections, Inc.*, 931 F.Supp. 459, 462 (D. M.D. La. 1996) (reasoning that the terms of the act "clearly contemplate a knowing and intentional act").

[29] *See* Docket No. 13, at 4.

consumer and a copy of such verification or judgment will be mailed to the
consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. [30]

Nuss contends—without evidentiary support—that JRM failed to provide the notices required by statute. However, sworn testimony[31] and documentary evidence[32] provided by JRM indicate that the initial written communication sent to all debtors, including the initial communication sent to Nuss in this case, contains the required notices and warnings. Thus, the Court will grant JRM's Motion on this claim because the only evidence in the record shows that JRM complied with the FDCPA by providing all the notices and warnings in writing as required by statute.

B.      VIOLATIONS OF THE UCSPA

Nuss alleges that JRM has violated the UCSPA by engaging in "deceptive" and "unconscionable" acts and practices in conjunction with its collection activities.[33] Under the UCSPA, the defendant must have "committed a deceptive act or practice 'knowingly or

---

[30] *See* 15 U.S.C. 1692g(a)(1)-(5).

[31] *See* Docket No. 13, at 2 (testifying that the inclusion of the notices is JRM's standard business practice).

[32] *See* Docket No. 13, Ex. A.

[33] *See Carlie v. Morgan*, 922 P.2d 1, 6 (Utah 1996).

11

intentionally.'"[34] And under the UCSPA, a plaintiff cannot assert that an attempt to collect a debt is deceptive or unconscionable simply because the debt is contested.[35]

As with his other causes of action, Nuss has failed to support his UCSPA claim with anything more than unsupported allegations, which, again, is not enough to defeat a motion for summary judgment. The Court, consequently, will grant the Motion for Summary Judgment in JRM's favor.

C.     FAILURE TO PROSECUTE

Having found summary judgment appropriate, as set forth above, the Court finds JRM's Motion to Dismiss under Rule 41(b) to be moot.

## V. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 6) is GRANTED. It is further

ORDERED that Plaintiff shall show cause as to why his claim against Defendant Utah Orthopaedic Associates should not be dismissed for failure to prosecute. Failure to do so within fourteen (14) days of this Order may result in dismissal of those claims.

---

[34] *Kee v. R-G Crown Bank*, 656 F. Supp. 2d 1348, 1356 (D. Utah 2009) (quoting Utah Code Ann. § 13-11-4(2)).

[35] *See id.*

DATED   August 2, 2011.

                    BY THE COURT:

                    _____
                    TED STEWART
                    United States District Judge